2010-7042 LATSCH v. DVA. Mr. Spaulding, whenever you're ready. Thank you, Judge. May it please the Court. Mr. Latch appeals from the United States Court of Appeals Veterans Claim Decision denying his disability for a heart attack that occurred while he was a member of the Reserve. The facts before your honors are undisputed. It's undisputed that he was, Mr. Latch was doing two jobs at once as first cook and as master sergeant, but not getting paid as a master sergeant. It's undisputed that at the time of the heart attack he was reviewing paperwork that was necessary for him to carry out these duties. It's also undisputed that there are 15 medical reports in this case, 11 which are from Mr. Latch and from his treating physician, Dr. Gills. He has two reports. His cardiologist, Dr. Miller, has three reports. There was a Colonel Spears who submitted two reports. What is the legal issue involved that's before us? We can't be applying law to facts or reweighing the facts or otherwise. We're very limited. We have very limited review jurisdiction of cases from the Veterans Court. What is the legal issue that you're saying? The error was made which would require us to reverse and send it back. Sure. The reason I brought up the facts is because they are undisputed, which makes it clear that these are legal. We read the briefs. You're sure of that? We know what the facts are. Let's focus on the legal issue that's before us, if any. Sure. There are four distinct legal issues. The first one is that they're all independent, any one of which could serve as a basis for the reversal of the opinion below. The first legal issue is that the court misinterpreted 38 U.S.C. Section 101 on what actual military service is. The second legal issue is the benefit of the doubt standard was misinterpreted by the court. That standard's found in 38 U.S.C. 5107B and in 7104D1. Is there any misinterpretation of that statute, or are you merely contending that the interpretation of that statute to the facts at hand was inappropriate? I think there's a fundamental misinterpretation. You're still thinking about the second legal issue. I mentioned the burden. The way the courts below describe the burden, it's not as if it's the benefit of the doubt standard of proof is what it is. They're calling it a doctrine just used when the evidence is in somewhat equipoise, and then the tie goes to the runner. But that's not what it is. It is a standard of proof, just like beyond a reasonable doubt in criminal trials, preponderance of the evidence in civil cases, going all the way down. We have a long line of precedent that supports that conclusion, that basically it's a rule that applies when the evidence is in equipoise. That is a situation when the application of the rule becomes apparent, but that is not the whole rule. Did you catch my trick? I'm not sure that I do. The benefit of the doubt standard of proof applies to all material issues throughout the case, and its thrust is to make every effort to ensure that our veterans are awarded a benefit. That's from the Gilbert Derwinski case. It's in recognition of the debt that we owe to our veterans. Are you talking about the applicability of the benefit of the doubt to 101? I thought you started talking about 101, and that's whether or not he was on active duty, right? Yeah, I did begin speaking about that, but then the judge asked me about the second issue. Well, if you could, could you turn to 101 and the Section 24? So what's the legal argument there, that his conduct came within this? You're saying that what happened to him came within this provision, and you're saying the government is saying that it didn't? Correct. Veterans are paid disability compensation for all personal injuries suffered or any preexisting condition aggravated during active military service. Active military service is further defined to include, A, when you're on active duty, B, when you're on active duty for training, and C, when you're on inactive duty for training. That is known as the weekend warriors. That's what Mr. Lech was on during the weekend. He was a weekend warrior, but what happened to him didn't occur during the weekend in which he was on the training, right? That's correct. So is the legal dispute here whether or not when it occurs on other time, it's still covered by the statute? Precisely, that is the legal dispute. So you want us to read the statute to have another section that says any period between inactive duty training is also covered? Well, no, the statute doesn't define inactive duty training there. Inactive duty training is elsewhere defined as very broad. There is no law offered by the secretary at all, no statute, no case, no regulation that says you have to be on the base during the weekend carrying out your duties. Well, it says any period of inactive duty training. Right. Those periods defined as the weekend times? No, they're not. There is no law that is submitted by the secretary that so defines it. And the law, to the contrary, included in the definition of inactive duty training is special additional duties performed by the soldiers on a voluntary basis in connection with the prescribed training or maintenance of activities to which they're assigned. That's 38 U.S.C. 101 Section 23B. So that's a very broad definition of what it is. It's undisputed he was working on his military work at the time of the cardiac arrest. Now, this issue is only relevant as to whether or not he has to prove that he suffered this injury in the line of duty. If it's found that he was in the military service, it's undisputed that this occurred while he was a member of the reserve. So as any other soldier, he would automatically get disability. Well, reading the section you're referring to, it sounds to me like somebody has to assign or authorize him to be doing this. Was that the case here? Did they say you have to complete this during the intermittent week between the weekend training? This had to be done to prepare for the next weekend's food. He's preparing food for over 500 people. It's his job. So the paperwork needs to be done as part of his military duties. And instead of citing to a provision that says you have to be on the base, it has to be during the weekend when this occurs, the secretary references another statute, another section of the statute which says, oh, you're covered if you're driving to the base or coming home from the base. Well, that shows you right there, contrary to what it was argued for, that you can not only get recovery when you're not doing your military duties officially. I mean, you're driving a car. You're not doing anything to carry your duties other than getting there. But it also shows the liberal interpretation of these rules as to what inactive duty is. So if he had a heart attack when he was driving to work, it's undisputed on the secretary's argument that he would be covered. He would receive disability benefits. But even if, Mr. Pasquale, what would happen if, in fact, he was at home and he was not preparing papers for the cooking assignment, but had taken his rifle home dirty and he was cleaning his rifle, and while he was cleaning his rifle at home, he had a heart attack? Would that be covered? It would depend upon the soldier's military duties, is our argument. He had to have a clean rifle. He didn't clean it while he was on duty on the weekends, but he waited until Monday night to clean his rifle and oil it and have it ready for the next month. This soldier's MOS is an infantryman. I'm not sure he has the shoulder— Wait a minute. Hypothetically, hypothetically, would he be covered at that point in time? The soldier I'm talking about. On those bare facts, I would say no, he would not be covered, unless I had additional facts that showed that that was part of his military duty. I mean, typically speaking, there's a time and a place to clean your weapon. I think that's done on the weekends. But, I mean, without more facts in a vacuum, I can't answer. Isn't also there a time and place where he had to prepare the meals and also the menus? During the weekend, he was on active duty? He's first cook who prepares the food and makes everything. The mess sergeant is transferred. Instead of promoting him to mess sergeant, hiring another first cook, he's doing both jobs. So he has to prepare, plan, and do all the paperwork of the higher-paying job that he doesn't have, as well as do the work on the weekend of actually feeding the hundreds of soldiers. But you're asking for the statute to be applied all the way across. So if he doesn't get his work done while he's on active duty and brings it home to complete his work, that means that during the time that he's at home, not on active duty, he has a heart attack, that that would be a covered injury. I am arguing that, yes. And I'm also arguing that even if the heart attack didn't occur the precise moment that he was doing the paperwork, all the doctors in this case opine that it was perceived job stress which caused the heart condition. So the cause of the condition is still the stress from the job. But he also had civilian duties, too, which were stressful. But that's not what he complained to the doctors about. He complained to the doctors about not being promoted to sergeant, about having to do two jobs, about having to drive five hours each way, and being transferred to make that commute that long. Can I ask you to briefly tell me about the due process allegation? Because I'm not clear on what action, precisely, you're alleging violated his due process. Yes. Very good. I just want to make clear, even on that first issue, even if Your Honors disagree with my position, that doesn't end the case. If you were to agree with that position, that means that you just automatically find that it was coincident with his service. If you don't agree with me on that position, it goes on to this issue, which is, are these service connected? And with regard to service connection, our constitutional argument is basically that it relies on the Cushman v. Shinseki decision, 576 F. 3rd 1290. There, there were two reports. Now remember, it's undisputed that the government has four reports, medical reports. Two of those medical reports, the government's reports, state that it's likely, as not, that the heart attack was caused from his military service. That supports ours. The other two state it is not. In Cushman, information was completely, I mean, it was misstated. It was fabricated in the report, and he didn't find that out until way later. I'm having a hard time seeing how these facts are comparable to Cushman. Well, in Cushman, we have a very similar situation. You have, again, two medical reports. One, the earlier one, which favors the soldier, and a later one, which does not favor the soldier's claim. That's exactly what happened here. Yeah, but in Cushman, the gravamen of the issue was that the reports had been fabricated in a way that was outcome determinative of his case. Here, there was no fabrication. Your only problem is that the board went back and told one doctor to reconcile apparent inconsistencies in his report. That seems a lot different than somebody fabricating something. I think in Cushman, it wasn't as strong as fabricated. They didn't know why there was a change. There was no explanation for the change. Yeah, but it was quite a different circumstance. Here, the board simply asked for clarification. This happens all the time. It's hard for me to discern what's the violation of due process. Well, here, when you have the first Dr. Sameh, who says it's as likely as not that the heart attack was caused by the job stress, and then the second Dr. Liu says the same thing, okay? So this goes back to the burden of proof. It should be one report here, one report there, not keep getting reports until you get your right answer. That's not exactly as I understood what happened in this case. That Dr. Liu also had other information in his report about other circumstances or things unique to this person that would have resulted in the heart attack. And that's the aspect of the board wanting to reconcile one statement and that, right? No, the report, his ultimate conclusion is what they asked him to change. And that is forbidden by their own handbook, which is cited in their report. Did they say change it? I thought they said reconcile or clear up the inconsistency. I don't think they told – they didn't order him to change it to come out a certain way, right? Well, let's not forget, these reports are made to determine whether it was likely that his heart attack was caused by job stress. He writes a report and says it's just as likely as not that it was. They don't like that report. They go back and say, you know, it seems that you said some things that were this way and this way, and it's not consistent with your ultimate conclusion. The handbook that they rely on says you cannot change the outcome of the report. I mean, that's the most important part of the report is whether it was as likely as not that the heart attack was caused or unlikely that the heart attack was caused. So your view is they violated his constitutional rights by telling him that he should go back and reconcile the statements in the report? That he should change his conclusion, his ultimate conclusion, the very purpose for the report, okay? And when you have two doctors the government had that reached that conclusion, okay? And we must not forget that Mr. Latch never saw the first report that was favorable to him until these proceedings began, okay? They denied his benefits without him seeing Dr. Liu's report, okay? So going back to the equipoise issue as well, if you have just looking at the government's experts, four of them, two reports come back saying it's as likely as not. How is that not in balance? Mr. Pasquale, you're into your rebuttal time. Do you want to save at least a minute of it? Please. Thank you. Ms. Hogan. Good morning, your honors. May it please the court. The appeal should be dismissed because Mr. Latch has not demonstrated that his appeal presents any question within this court's jurisdiction. More to the extent that it does raise a question within this court's jurisdiction. The Veterans Court correctly affirmed that there is no service connection between Mr. Latch's coronary artery disease and his military service. And Mr. Latch has not identified any error of law or constitution below. With respect to Mr. It does seem that he is questioning the meaning of section 101.24. Isn't that within our jurisdiction? Well, Mr. Latch may certainly be questioning the meaning of that. But if you look at the Veterans Court's decision, to the extent that they considered that statute, it was a question of law that was so obvious that it was simply an application of law to facts. That a heart attack which occurs between two weekend duty times does not constitute active military service. What about if during one weekend he's told by a supervisor that by the time you get back here next Friday night or Saturday morning, you've got to complete these 14 forms. In other words, it's clear he's ordered to do something during the interim period. And let's assume he has a heart attack or whatever while he's working on those forms. Would that be included or not included in the statute? Your Honor, we don't believe that would be included. Because again, we have, for reservists, very strict and reasonably so definitions of what kind of inactive duty training constitutes active military service. Yeah, I know. That's what I'm looking at. In 23, it defines inactive duty training. Tell me why I'm misreading this. Because it seems under B, it also includes special additional duties authorized by authority of somebody designated by the secretary. So I thought my hypothetical was intended to cover certain special additional duties that he was ordered to perform during the interim period. Why wouldn't that come within the definition of inactive duty training? Presumably, if there were actual official orders that Mr. Blatch do something. But I don't think that your example, Your Honor, is any different than the cleaning the rifle example. Or, for example, ironing his uniform, which would have necessarily been required prior to, which was certainly something required of his job. But not something that he had orders necessarily to do. Does it have to be official orders? Or can it be the fact that the work that he was assigned could not be completed within the time period assigned? And the person assigning it knew that, but gave it to the person anyway. So he had to take it home over the weekend and complete it. Your Honor, I think we have very, and for good reason, very narrow definitions of what constitutes active military service. And simply anything that a soldier may do in between times where he's ordered to be on active or inactive duty training, simply doesn't constitute, is not intended to be covered by this statute. I think that the fact that Congress amended in 2000 the statute to include time coming to and going from that weekend duty to be covered by the Service Connection Statute is evidence that whatever else is done during those weeks in between the weekend service does not constitute active military service. I would presume that's because when you start your duty, you start when you start driving towards the base. That's the commencement of your duty. And you don't finish it until after you leave the base to drive home. Right. I think the orders are from home to home when they're issued. But you're under specific orders at that particular point in time. Correct, Your Honor. I don't know if that's really an equivalent type of a situation where an individual is given enough work by his commanding officer knowingly that it cannot be finished, so he's going to have to take it home to finish it. I'm not quite sure. We're talking about a gray area that's really not well defined by the statute or otherwise. Again, Your Honor, I think this issue was not directly addressed by the Veterans Court. There's nothing in the Veterans Court's decision that indicated that it specifically interpreted 101-24 to decide whether or not this allegation that his heart attack occurred while he was performing paperwork, not during the times that he had orders to be on active duty for training, simply doesn't present a question within this court's jurisdiction because it was not a question that needed to be decided by. Well, that depends, doesn't it? I mean, if he didn't make the argument, then there's a waiver position that you could take, saying that he didn't raise it, so he can't raise it here if he didn't raise it below. But just because a Veterans Court didn't deal with an issue at detail, if he raised it, we're not precluded from dealing with it if it's otherwise a legal issue, right? No, I think this court's jurisdiction is limited to considering the Veterans Court's interpretation of statutes and regulations. And just because the Veterans Court gives something short shrift, you suggested because the answer was so obvious, that doesn't take away our jurisdiction over it. I mean, they might have one line over it. They might interpret it as a statute and it might only take them three words to do it, but that doesn't deprive us of the jurisdiction of it, right? I think that the issue is not squarely addressed by the Veterans Court, but found it to be simply an application of facts here to the law in 101-24. What about the due process point? I mean, I don't know. You can clarify to me. What is the record with respect to what the board did? Did it order Dr. Liu to change his report? Can you clarify for me what the board told Dr. Liu to do? Yes, Your Honor. The board is authorized to request these VHA medical opinions when it believes that it would be helpful to its disposition of the case. And so here the board requested a medical opinion to discuss the causality between stress and coronary artery disease. When it received the opinion from the medical doctor, as can be seen in the last paragraph of that rejected opinion, there was a statement that stress was as likely or not to cause coronary artery disease, which was not consistent with the tenor of the rest of the opinion. And so I believe it's on page 68 of the joint appendix. The board sent that opinion back to the VHA and stated the following, Can you please clarify the following issue? Dr. Liu states that stress is as likely as not a cause of CAD, but his opinion is largely supportive of his conclusion that there is insufficient evidence to show such an association. So the board did not request that Dr. Liu take one position or the other, but simply said, can you please clarify these apparent inconsistencies? And that's consistent with the board's own handbook, which charges the board with reviewing the medical opinions that it receives and requesting clarifications where the opinion is not clear or not helpful to the board. So what the board did here was entirely consistent with its own procedures. And once it received an opinion from Dr. Liu that stated a firm conclusion, it shared that opinion with Mr. Lash. And Mr. Lash was afforded the opportunity to respond to that opinion, which he did by submitting a medical opinion from his own doctor. So under the board procedures, the veteran doesn't get a copy of the medical reports as filed? Well, Your Honor, I would say that the preliminary opinion was not filed. It was rejected by the board because it did not respond to the board's request. And I think that is a matter as much of the board's own quality control over the VA when the board asks a VHA doctor to give an opinion and the doctor doesn't give an opinion that is responsive. Do you read this request for clarification with allowing Dr. Liu? If Dr. Liu could have done at least one of two things, it seems to me reading it, he could have changed the bottom line, which says as likely as not as the cause, or he could have changed what the board construed as being largely supportive of the fact that there's insufficient evidence, right? He could have done either of those. Yes. Yes, Your Honor. So we don't believe that this case is at all similar to Cushman because here the board did follow the procedures that it has set out for itself. And the report that was rejected was revised by the doctor himself. And we would also note that, of course, the government is presumed to act in good faith. So when the board is asking for a clarification of a medical opinion, this court must assume that that was done because the board was really trying to understand the ultimate conclusion of the doctor in order to assist it in resolving Mr. Latch's claim. But the fact that the veteran doesn't know this is all happening seems a bit sketchy, does it not? Because any lawyer, if they were aware of the previous opinion, would have used that to undermine Dr. Lu's subsequent conclusions, right? I mean, that's the kind of thing that goes on all the time. So why isn't that document something that at least the veteran should have been aware of, at least the initial report, so that he could try to discredit the subsequent report that was used against him? One reason is because we are in the VA system. And so this isn't like a federal district court where you might cross-examine the doctor on his prior opinions. Here, the report was requested by the board because the board determined that such expertise was needed for equitable disposition of the appeal. The board only used the final version of the report, and that was the one that was shared with Mr. Latch. The board wasn't going to use the rejected opinion because it didn't provide any evidence one way or the other because it was internally inconsistent. So this is not a case where even Mr. Latch was denied an opportunity to review evidence that was favorable to him, because it wasn't favorable to him. It was absolutely equivocal and confusing. And so the board decided that it could not use that and requested that the doctor revise his report one way or the other. Would this be different if the board had referred this back and said to Dr. Lu, you know, the conclusion you reach is inconsistent with the rest of your opinion. Please revise it to be consistent and send it to us so that we can enter it in the record. Certainly that gets closer to a problem than the language here, Your Honor. But here it seems apparent that the board was not requesting any either outcome, just to be clear on what the outcome, what the ultimate conclusion the doctor was drawing. Of course, the question of whether it crosses that line and is improper or proper is a question that the veteran should have the opportunity to address. Should he not? Right now, Your Honor, or just in general? At some point in the process. This gets to the due process question that's being raised here. Well, both of the opinions were in the record below. So Mr. Lutch could have raised that issue before the veterans court. Were they in the record before the board or just before the veterans? I believe it was just before the veterans court. So the prior record was available and could have been rebutted at that point? Yes, Your Honor. I mean, the rejected opinion is at page 67. We see it in the record, yes. Right. I mean, you can see that below it says record before the agency. So that is the record that's used before the veterans court. So you're suggesting if somehow hypothetically the board did something untoward that would be available, that would be discoverable, that would come out at least before the veterans court, which point could be challenged? Certainly. And the veterans court is in a particularly appropriate place to really review what the board is doing and ensure that what the board is doing is for the benefit of the veteran consistent with the statutes that the board is charged with following. Well, they have the power to remand it at that point also. That's absolutely correct, Your Honor. If the court has no further questions, we respectfully request that the court dismiss the appeal.  Mr. Fowler, you have one minute. To suggest that they asked for a clarification does not reflect the record at all, Your Honors. Their letter to Dr. Liu after it was the second time they got an opinion saying it was likely as, this time from a second doctor, is your opinion is largely supported of his conclusion that there is insufficient evidence. That's the way, that's more than a request for clarification. They're telling him he's concluded that it wasn't connected in the letter, albeit in unclear language, but it's not a suggestion, it's not a request to clarify. It's saying your conclusion is that there's insufficient evidence. Now make the report so. And that's at page 14 of a reply brief. But Mr. Lynch had the opportunity to air that issue, did he not, before the veterans court? He could argue the propriety or impropriety of that process, could he not? Yes, he could, before the veterans court. Well, he didn't know that the court of appeals was going to just rely on the final Liu opinion, and that's all the court of appeals relied upon. No, but he had the opportunity to raise this issue before the court of veterans appeals, right? Correct. So in what sense was his due process rights violated? Well, the sense in which they were violated doesn't go to the precise issue, it goes to the other issues we state, relying on the Cushman decision, where you have an opinion and then you get rid of the favorable one, and then use the one that's not favorable. Okay, I just wanted to address briefly the fourth independent ground, because it was decided by Judge Geyer-Sahir and argued by my worthy adversary here, and that is that the court invented a new rule requiring, because the court required a new rule, invented a new rule, I'm sorry, saying that his medical evidence is no good because his doctors didn't comment on other factors. After these cases were briefed, after this case was briefed completely, this court came out with a decision of Wayne Garden at 613 F. 3rd, 1374, this past summer, where they reversed the decision saying that the court invented a new rule because they completely discounted the soldier's expert opinions because one of the doctors said he didn't look at the military file. And this is a misinterpretation of Section 1154A. The Garden case is directly outlawed. That's not raised on the government side right now, is it? This is not rebuttal, so let's terminate it before we have it. If you want to submit it, you can submit it on a 28-J letter to the court.